Electronically Filed
7/12/2021 3:07 PM
Third Judicial District, Canyon County
Chris Yamamoto, Clerk of the Court
By: Devon Hally, Deputy Clerk

Greg Chaney I.S.B. 10513
**CHANEY LAW OFFICE**
PO Box 489
Caldwell, Idaho 83606
Telephone: (208) 314-3850
Facsimile: (208) 549-9612
info@gregchaneylaw.com

Attorney for Plaintiff

IN THE DISTRICT FOR THE THIRD JUDICIAL DISTRICT

FOR THE STATE OF IDAHO, IN AND FOR THE COUNTY OF CANYON

| | |
|---|---|
| TRACI STEVENS,<br>         Plaintiff,<br><br>     vs.<br><br>BROWN BUS COMPANY and DOES 1-10,<br>Inclusive<br>         Defendants. | Case No.  CV14-21-06330<br><br>COMPLAINT |

**COMES NOW,** Plaintiff Traci Stevens by and through her attorney of record, Greg

Chaney, and for his causes of action against Defendant Brown Bus Company complains and

alleges as follows:

Traci Stevens was an employee of Defendant Brown Bus Company with a promising

future.  Ms. Stevens was hired in July 2019 and immediately thereafter, started experiencing

unwanted harassment including touching and groping from Brown Bus Company employee,

and route supervisor, Chuck Macomber, ("Macomber").  Even after management was

COMPLAINT                                                          PAGE 1

EXHIBIT A - 000001

repeatedly advised of Defendant Macomber's inappropriate behavior toward Plaintiff and others, Defendant, Brown Bus Company failed to address, correct, or guard against Macomber's sexual harassment of female co-workers generally, and Plaintiff specifically. Shortly after Brown Bus Company management was advised of Macomber's inappropriate behavior, he was promoted to the position of Training Supervisor.

Plaintiff has lived with constant apprehension of further sexual harassment and taken intentional steps to avoid being in Macomber's general vicinity—a difficult goal to accomplish given the fact that Macomber is the Training Supervisor and that Plaintiff at the time was a relatively new driver for Brown Bus Company at the time of the incident.

## JURISDICTION AND VENUE

1.      At all times material hereto, Plaintiff Traci Stevens ("Plaintiff") was and is a resident of the State of Idaho, County of Canyon.

2.      Defendant, Brown Bus Company (Nampa, Idaho), is and was a subsidiary of Illinois Central Bus Company and an employer within the State of Idaho within the definition set forth in §67-5902, Idaho Code.  Brown Bus Company is doing business in Canyon County.

3.      Chuck Macomber was at all times mentioned herein an employee of Brown Bus Company doing business in Nampa, Idaho.

4.      This action arises from personal injuries incurred by Plaintiff while employed by Defendant Brown Bus Company whose place of business is located at 2111 E. Sherman Avenue, Nampa ID 83686.

//

//

COMPLAINT                                                   PAGE 2

## **STATEMENT OF FACTS**

5.     Brown Bus Company is a contracted busing company located in Canyon County with several employees and supervisors in their employ.

6.     Upon information and belief, Brown Bus Company has route supervisors, a new employee training supervisor, and a head supervisor known as Marie Herman.

7.     Plaintiff was hired in July 2019 and is a current employee for Brown Bus Company.

8.     Plaintiff frequently volunteered to help Brown Bus Company with extra duties and would often remain after her shift to gladly help clean the buses, and do additional work not stated in her contract.

9.     Plaintiff is a single mother and has not had any work violations.

10.     Shortly after Plaintiff's hiring, on or about July 15, 2019, a route supervisor, Chuck Macomber, began to "gently rub," Plaintiff's back, without her  permission.

11.     On or about the week of July 15, 2019, on several instances, Macomber twirled his fingers through Plaintiff's hair and casually asked her if she "didn't have time to do her hair this morning?" Plaintiff never gave Macomber permission to "twirl and yank" his fingers through her hair.

12.     During Plaintiff's training, on or about July 22, 2019, she watched a Brown Bus Company video about sexual harassment in the workplace and signed a form stating she knew and understood what it was.

13.     On or about July 28, in the employee room, in a massage like manner" Macomber placed his hands on Plaintiff's back, without her permission, asking how she was doing.

14.     During training, on or about July 28, Macomber specifically bought breakfast for the new female trainee employees including Plaintiff.

COMPLAINT                                                    PAGE 3

15.     On or about August 2, 2019, in the employee room, Macomber used his hands to smoothly touch Plaintiff's back, again without her permission.

16.     Continuing for the several few weeks, and without asking Plaintiff's permission, Macomber continued to "touch" Plaintiff's back in a massage like manner, and lightly "yank and twirl," his fingers through her hair.

17.     Being a new employee, Plaintiff was very nervous and scared around Macomber.

18.     On or about September 3, 2019, Plaintiff advised another supervisor of Brown Bus Company, Jacob Hausser about Macomber's constant "touching of her back," and "twirling his fingers through her hair," which she explained as unwanted attention and touching of her person.

19.     Mr. Hausser advised Plaintiff that he was very upset to hear about Macomber's unprofessional conduct and advised Plaintiff he would "watch out" for her.

20.     On or about September 10, 2019, Mr. Hausser observed Macomber "rubbing and touching" Plaintiff's back in the employee room without Plaintiff's consent.

21.     Mr. Hausser advised Macomber to immediately leave the employee room.

22.     On or about September 16, 2019, Mr. Hausser reported Macomber's touching behavior towards Plaintiff to the head supervisor, Marie Herman.

23.     After the meeting, Marie Herman did not address or discuss Macomber's unwanted "touching" of Plaintiff.

24.     Plaintiff continued to receive "light massages," and gentle tugs of her hair by Macomber, without her permission.

25.     On or about September 23, 2019, employee Jacob Hausser quit working at Brown Bus Company.

COMPLAINT                                              PAGE 4

26.     On or about September 23, 2019, Plaintiff advised another supervisor, Stephanie Brandner, she did not feel comfortable being alone with Macomber.

27.     Plaintiff specifically stated she did not want to perform the last set of skills training tests with Macomber alone on a bus because of the way he constantly touched her without her permission.

28.     Stephanie Brandner assured Plaintiff she understood her concerns and that Macomber would **not** supervise Plaintiff's last set of training skills tests where they would be alone together.

29.     On or about September 25, 2019, Plaintiff began her last training skill tests.

30.     Plaintiff's supervisor for these last set of training skills was Macomber.

31.     On or about September 25, 2019, Plaintiff began the first training test "practice run," with Macomber.

32.     Within the first few minutes of the practice run alone, Macomber lightly rubbed Plaintiff's shoulders and said "good job, Babe" after Plaintiff performed a successful turn.

33.     After a glaring look by Plaintiff, Macomber quickly said "sorry, *I know* that's sexual harassment."

34.     Within a few minutes of performing another successful driving maneuver, Macomber again referred to Plaintiff as "Babe," as he gently touched and rubbed her back, again without Plaintiff's permission. Plaintiff quickly advised Macomber to stop this unwanted behavior.

35.     Plaintiff advised Macomber that if he called her "Babe" one more time, she would push him down the bus stairs.

COMPLAINT                                                    PAGE 5

36.     Immediately following Plaintiff's complaint to Macomber, he did not attempt to touch Plaintiff or call her "Babe," however, as the training continued and as Plaintiff continued to perform more successful maneuvers and turns, Macomber repeatedly lightly stroked Plaintiff's back and referred to her as "Babe."

37.     During the first practice run, Plaintiff did give consent for Macomber to use his fingers to draw a diagram on her arm to indicate the proper turn maneuvers she should be doing.

38.     Plaintiff consented to no other touching by Macomber.

39.     As standard protocol, Brown bus has video and audio recordings within each vehicle.

40.     On or about September 27, 2019, Macomber was again assigned to be alone with Plaintiff on another practice training course.

41.     During the practice course, Macomber continued to stroke and rub Plaintiff's back during the numerous maneuvers she performed while in training.

42.     During this practice course, Macomber invited Plaintiff to come over to his house and sit in the hot tub with him.

43.     Also, during this practice course, Macomber suggested they "take the bus" to Plaintiff's house.  Macomber then recited Plaintiff's address to her after which she became very concerned for her personal safety.

44.     Plaintiff felt a great uneasiness and nervousness after Macomber's offers, which she fearfully outright rejected.

45.     It is Plaintiff's belief based on Macomber's comments and actions to Plaintiff "that he has had sex on the buses owned by Brown Bus Company" with other individuals is very concerning to Plaintiff.

COMPLAINT                                                    PAGE 6

46.    On or about October 3, 2019, Plaintiff had her final practice test with Macomber wherein he was supposed to be the sole supervisor, however, two other supervisors, Stephanie Brandner and Paul Smalley were also in attendance to the relief of the Plaintiff.

47.    During the practice test, Macomber verbally criticized Plaintiff during the training including screaming at Plaintiff that she was "stupid and "dumb".  Plaintiff asked Macomber to please not call her names.

48.    Another Brown Bus Company supervisor, "Tiffany," advised Macomber to "knock it off."

49.    During the practice test, Macomber softly apologized to Plaintiff stating he was frustrated because "it was supposed to be *only* you and I."

50.    Because of these events, Plaintiff did not perform well during that practice test.

51.    The next day, Brown Bus Company training supervisor Paul Smalley took Plaintiff on a second final practice test and Plaintiff had an excellent performance.

52.    On or about October 3, 2019 Macomber entered the same employee room with Plaintiff and several other Brown Bus Company employees.

53.    Defendant again, without asking Plaintiff, placed his hands on her shoulders and caressed her back as he asked her "you want to go?"

54.    Plaintiff quickly swatted Macomber's hands and told him "EWW NO!"

55.    Macomber continued in conversation with another employee, Kimber Hall engaging in inappropriate conversation about her lip piercing indicating he had seen it on Facebook. Ms. Hall seemed to be very concerned that Macomber was "stalking" her on social media and questioned him about it.

COMPLAINT                                                    PAGE 7

56.     Macomber responded "no, I am stalking her," as he indicated through gesture, it was Plaintiff he was referring to.  Macomber left the employee room after his statement.

57.     On or about October 3, 2019, Plaintiff again reported the harassment to training supervisor, Paul Smalley, including all of the unwanted "touches," "stroking," and "back rubs" she was continually subjected to by Macomber indicating she wanted it to stop.

58.     Paul Smalley apologized to Plaintiff about what was happening and stated he would have a meeting with the head supervisor, Marie Herman to discuss the non-consensual inappropriate conduct directed to Plaintiff by Macomber.

59.     On or about October 4, 2019, Paul Smalley had a meeting with the head supervisor Marie Herman regarding the unwanted sexual harassment that was happening towards Plaintiff.

60.     After the meeting, non-consensual groping and rubbing of Plaintiff's body by Macomber was not addressed.

61.     Paul Smalley quit working at Brown Bus Company shortly after that meeting.

62.     After the meeting between Paul Smalley and Marie Herman regarding Macomber's unwanted tendencies to "touch Ms. Stevens," Macomber continued to caress Plaintiff's back, without her permission.

63.     On several occasions thereafter Macomber stood in an aisle where Plaintiff had to walk past him. The aisle did not have enough space for two people to walk past each other, without touching each other. Macomber purposefully waited for Plaintiff, and purposely positioned himself so that his body would rub up against Plaintiff as she walked by.

64.     Plaintiff is currently fearful to be in any location at Brown Bus Company with Macomber.

COMPLAINT                                                                    PAGE 8

65.     On or about October 23, 2019, Plaintiff and other employees were required to take a written test.

66.     Before the written test began, Macomber specifically stood behind Plaintiff and pressed his body over her own body, in a manner so that Macomber's chest rubbed against Plaintiff's back, as Macomber passed out the test papers.

67.     Plaintiff again immediately advised Macomber to "STOP, you *don't need* to *touch* me."

68.     Plaintiff was so frazzled by Macomber's chest rubbing against her back, that she was sure she did not pass the written test on October 23, 2019.

69.     On or about October 24, 2019, Macomber was promoted to Training Supervisor.

70.     Plaintiff believes that many women employees have quit working for Brown Bus Company due to harassment.

71.     Brown Bus Company is Plaintiff's sole income for her and her children.

## LEGAL THEORIES

72.     Defendant Brown Bus Company had a duty to provide a safe and harassment free working environment for Plaintiff.

73.     Defendant Brown Bus Company had a duty to investigate the claims of harassment by Plaintiff and failed to do so even after numerous complaints.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

COMPLAINT                                                              PAGE 9

EXHIBIT A - 000009

**WHEREFORE**, Plaintiff requests that the Court enter Judgment against Defendants for Plaintiff's general and specific damages as follows:

Plaintiff's lost income and for future earning potential;

Plaintiff's pain and suffering

Plaintiff's costs and attorney's fees in bringing this action; and

For such other and further relief as the Court deems just and fair.

DATED: 07/12/2021          **CHANEY LAW OFFICE**

BY:     /s/ Greg Chaney
        Greg Chaney
        Attorney for Plaintiff

COMPLAINT                                    PAGE 10